UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CELINE LOH XIAO HAN, VANNESSA CHAO
WAN YI, SUPPHATTRA SONBANKOH, JHOAM
FELIPE TOLEDO VILLAMIZAR, LIZETTHE
NATALIA TORRES JAIMES, and VICTOR
JOSHUE ROCAFUERTE ALAY,

                     Plaintiffs,

-against-

INTEREXCHANGE, INC., EIFFEL REDDINGS,
LLC, MARIE EIFFEL, LLC, REDDINGS
MARKET, LLC, and MARIE EIFFEL,

                     Defendants.

Case No. 1:23-cv-07786 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

    Plaintiffs — Celine Loh Xiao Han, Vannessa Chao Wan Yi, Supphattra Sonbankoh, Jhoam Felipe Toledo Villamizar, Lizetthe Natalia Torres Jaimes, and Victor Joshue Rocafuerte Alay — are foreign nationals who were staffed through a government-backed work-travel program at Marie Eiffel Market. They bring this action against Marie Eiffel, Eiffel Reddings, LLC, Marie Eiffel, LLC, and Reddings Market, LLC (together, the "Eiffel Defendants"), and the company that sponsored their visas, InterExchange, Inc. ("InterExchange," and, together with the Eiffel Defendants, "Defendants."). The parties now seek judicial resolution of a dispute that has arisen during discovery. *See* Dkts. 140, 142, 143.

## BACKGROUND

### I. The Dispute

    On April 21, 2025, the Eiffel Defendants brought to the Court a dispute regarding documents that are being withheld by the Plaintiffs as set forth in their privilege log, and asked the Court to conduct an *in camera* review of all communications that Plaintiffs withheld

under the common-interest privilege. Dkt. 140 at 2. According to the Eiffel Defendants, after the parties held a meet and confer on April 15, 2025, Plaintiffs produced a single document that had previously been withheld — a communication between Plaintiffs and a nonparty concerning the lawsuit — and amended the privilege log to assert the common-interest privilege. *Id.* at 2. The Eiffel Defendants asserted that the privilege log served by Plaintiffs was "vague and overbroad," including in its invocation of the common-interest privilege. *Id.* On April 25, 2025, Plaintiffs responded to the Eiffel Defendants' letter-motion, asserting that the specific communications with which the Eiffel Defendants took issue were protected under the common-interest doctrine because they were communications between co-plaintiffs, all of whom are represented by common counsel, and made in furtherance of legal strategy. Dkt. 142 at 3. Specifically, Plaintiffs represented that each of the communications pertained to either (1) "the provision of attorney advice," (2) the collection of "information and documentation for the attorneys — and at the attorneys' directions — to be utilized in furthering the collective legal strategy in the case," or (3) preparation of "communications to be sent to the [p]arties' attorneys on behalf of the collective Plaintiffs." *Id.* On April 28, 2025, the Eiffel Defendants produced a log of the specific documents for which they were seeking *in camera* review. Dkt. 143.

The Court held a conference to address the dispute on April 30, 2025. Dkt. 147 at 1.[1] At that conference, the Court ordered the Eiffel Defendants to select fifteen exemplars from Plaintiffs' privilege log for the Court's *in camera* review by May 2, 2025. *Id.* Plaintiffs'

---

[1] The Eiffel Defendants also argued in their April 21, 2025 letter-motion that Plaintiffs' productions of social-media data were deficient in several respects, including because Plaintiffs had not produced metadata and had produced data in an unusable and noncompliant format. Dkt. 140 at 1. At the April 30, 2025 conference, the Court ordered the parties' respective vendors to meet and confer regarding the issue by May 5, 2025. Dkt. 147 at 1. That issue is therefore not presently before the Court.

2

counsel agreed that the documents that are being withheld contain duplicative and overlapping information such that review of a subset of those withheld should be sufficient to extrapolate a determination on the remaining documents. The Eiffel Defendants also agreed with this approach. The Court ordered Plaintiffs to provide the Court with an *ex parte* submission by May 7, 2025, with those documents and a letter explaining why each of those documents should be withheld. *Id.* The Eiffel Defendants were likewise provided an opportunity to submit a letter providing any additional authorities in support of disclosure of the types of documents that Plaintiffs described in their April 25, 2025 letter. *Id.* The parties submitted their respective materials in accordance with the Court's Order by May 7, 2025. *See* Dkts. 148, 150, 152.

## DISCUSSION

### I. Overview of the Common-Interest Privilege

For the common-interest privilege to apply, "(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared, and (2) the statements for which protection is sought must have been designed to further that interest." *City of Almaty v. Ablyazov*, No. 15-cv-05345 (AJN) (KHP), 2019 WL 2865102, at *7 (S.D.N.Y. July 3, 2019) (alteration adopted) (quoting *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 434 (S.D.N.Y. 2013)). "To meet the first element of this test, the parties must show that they are 'coplaintiffs or persons who reasonably anticipate that they will become colitigants' concerning 'pending or reasonably anticipated litigation.'" *Id.* at *7 (quoting *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 37-38 (N.Y. 2016)). "Although some courts in this circuit have articulated a requirement that the common interest be identical and not merely similar, other courts have questioned this, and have simply focused on whether the parties had interests in common without exploring whether they were

identical." *GMA Accessories, Inc. v. HMY Jewelry, Inc.*, No. 20-cv-11126 (JPC), 2021 WL 1885260, at *1 (S.D.N.Y. May 11, 2021) (internal quotation marks and citation omitted). "Because the privilege protects communications whenever there is a common legal interest, 'it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply.'" *Smith v. Pergola 36 LLC*, No. 22-cv-04052 (LJL), 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022) (quoting *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)).

The fact that there are no attorneys on the withheld communications is not determinative. Courts in this district have repeatedly held that an attorney need not have created or received a communication for parties to invoke the common-interest privilege. *See, e.g.*, *Smith*, 2022 WL 17832506, at *7 ("Though an attorney need not be present for the communications, the communication must satisfy the requisites of the attorney-client privilege before they fall under the auspices of the common interest doctrine." (citation omitted)); *Gucci Am, Inc. v. Gucci*, No. 07-cv-06820 (RMB) (JCF), 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008) ("If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication."); *Kelly v. Handy & Hartman*, No. 08-cv-00163 (KMK) (GAY), 2009 WL 2222712, at *2 (S.D.N.Y. July 23, 2009) ("[T]he privilege is not forfeited even though no attorney either creates or receives that communication." (citation omitted)); *Schultz v. Milhorat*, No. 10-cv-00103 (AKT), 2011 WL 13305347, at *4 (E.D.N.Y. Apr. 11, 2011) (holding that common-interest privilege extended to correspondence between plaintiffs in consolidated cases).

The common-interest privilege is not "a separate privilege, but an extension of the work product or attorney client privilege." *Smith*, 2022 WL 17832506, at *7 (quoting

4

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-09367 (JMF) (SN), 2018 WL 3584020, at *3 (S.D.N.Y. July 23, 2018)).  In other words, "the common interest doctrine allows for the communication of privileged information to a third party without it constituting a waiver of privilege, so long as the third party and the client share a common legal interest and the parties cooperate in developing a common legal strategy." *Brunckhorst v. Bischoff*, No. 21-cv-04362 (JPC), 2022 WL 2764020, at *1 (S.D.N.Y. July 15, 2022) (quoting *GMA Accessories,* 2021 WL 1885260, at *1).  Therefore, the information that is shared between parties with a common legal interest must have been "otherwise privileged" — "[f]or example, if an attorney provides legal advice to a client . . . recommending that a defendant move for summary judgment . . . the client can repeat that advice to a co-defendant outside the presence of an attorney without causing the privilege to be waived." *Gucci Am.,* 2008 WL 5251989, at *1.  The common-interest privilege therefore "acts as an exception to . . . general waiver rules in order to facilitate cooperative efforts among parties who share common interests." *Schultz*, 2011 WL 13305347, at *2 (citation omitted).

**II.   Analysis**

As noted above, Plaintiffs' withheld documents fall within roughly three categories: correspondence pertaining to (1) the provision of attorney advice, (2) the collection of information and documents for the attorneys, and at the attorneys' discretion, to be utilized in furthering the collective legal strategy in the case, and (3) the preparation of communications to be sent to the parties' attorneys on behalf of the collective Plaintiffs.  Dkt. 142 at 3.  The Court will briefly overview the legal principles governing these categories before addressing each of the fifteen documents produced for *in camera* review.

### A. Communications Related to Legal Advice Given by Attorneys and/or Attorney Communications

To invoke the attorney-client privilege, a party must show: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Smith*, 2022 WL 17832506, at *7 (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1985*, 750 F.2d 223, 224 (2d Cir. 1984)). "It is well-settled that 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'" *Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 69 (S.D.N.Y. 2010) (alteration adopted) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)). "[T]he common interest doctrine allows for the communication of privileged information to a third party without it constituting a waiver of privilege, so long as the third party and the client 'share a common legal interest' and the parties cooperate in developing a common legal strategy." *GMA Accessories*, 2021 WL 1885260, at *1 (quoting *In re Rivastigmine Pat. Litig.*, No. 05-md-01661 (HB) (JCF), 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005)).

### B. Communications Related to the Collection of Information and Documents for Attorneys

Communications related to the collection of information and documents for attorneys implicate the work-product doctrine as well as the attorney-client privilege. As the Supreme Court has recognized, the "work-product doctrine is distinct from and broader than the attorney-client privilege." *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000)

6

(quoting *United States v. Nobles*, 422 U.S. 225, 238 & n.11 (1975)). The work-product doctrine "is codified in Rule 26(b)(3) and exempts from discovery 'documents and tangible things that are prepared in anticipation of litigation.'" *Guess?*, 271 F.R.D. at 73 (quoting Fed. R. Civ. P. 26(b)(3)(A)). "The work product doctrine is 'intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies "with an eye toward litigation," free from unnecessary intrusion by his adversaries.'" *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)). The doctrine therefore protects "'attorneys' mental impressions, opinions or legal theories concerning specific litigation' from disclosure in discovery." *Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160 (S.D.N.Y. 2024) (quoting *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001)).

"Documents should . . . be deemed prepared in 'anticipation of litigation' if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Strougo*, 199 F.R.D. at 520 (quoting *Adlman*, 134 F.3d at 1202). "Materials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege." *Id.* at 521 (citing *United States v. Adlman*, 68 F.3d 1495, 1501-02 (2d Cir. 1995)). For the work-product doctrine to apply, "it is not in fact necessary that the material be prepared by or at the direction of an attorney." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 492 (S.D.N.Y. 2019). "Thus, the rule 'affords protection to materials gathered by non-attorneys even where there was no involvement by an attorney.'" *Id.* (alteration adopted) (quoting *Wultz v. Bank of China Ltd.*, 304 F.R.D 384, 394 (S.D.N.Y. 2015)). "Work product protection is extended where it is shared 'between codefendants, coplaintiffs, or persons who reasonably anticipate that they will become colitigants.'" *BlackRock*, 2018 WL 3584020, at *4 (quoting *Ambac Assurance Corp.*, 57 N.E.3d at 37). "Unlike the attorney-client privilege,

7

the work product doctrine does not require that the documents be prepared at the behest of counsel, only that they be prepared 'because of' the prospect of litigation." *Guess?*, 271 F.R.D. at 74 (quoting *Adlman*, 134 F.3d at 1202).

The Eiffel Defendants seek broad disclosure, arguing that "[i]f the Eiffel Defendants asked Plaintiffs about the steps they took to search for and collect data and documents for this case, they would have to answer those questions." Dkt. 152 at 3. But asking for general information as to the steps and procedures that Plaintiffs took to identify and produce documents is different in kind and scope from inquiring as to particularized discussions and direction from counsel regarding specific documents or information to be collected or gathered; depending on the context, the latter arguably reflects attorney-client communications as well as "attorneys' mental impressions, opinions or legal theories concerning specific litigation,'" *Women's InterArt Ctr.*, 223 F.R.D. at 161 (quoting *Strougo*, 199 F.R.D. at 520).

### C.    Communications Related to the Preparation of Questions

Plaintiffs take the position that the attorney-client privilege (and by extension, the common-interest privilege) should extend to correspondence between parties "relating to the preparation of questions for counsel." Dkt. 150 at 3. For this proposition, Plaintiffs cite to *Schultz v. Milhorat*, 2011 WL 13305347. Plaintiffs assert that, "[c]ombined with the standard from *City of Almaty, Kazakhstan*, these cases support the argument that collaborative efforts to prepare correspondence to counsel, especially when that correspondence is related to questions, concerns, and opinions about the case, are intended to be covered by the doctrine if they are to obtain legal advice." Dkt. 150 at 3. But *Schultz* at most stands for the proposition that attorneys need not be on correspondence for it to fall within the scope of the common-interest doctrine. Contrary to Plaintiff's assertions, *Schultz* expressly states that

communications between plaintiffs are only protected by the common-interest privilege "if those communications are otherwise covered by the attorney client privilege as it is narrowly construed in New York." 2011 WL 13305347, at *4 (emphasis omitted). "Thus, the communication will only be privileged if it was specifically related to a communication *with the attorney* made for the purpose of obtaining or conveying legal advice." *Id.* (emphasis added). As *Smith v. Pergola 36 LLC* explains: "Where the communication was not originally made between client and counsel for the purpose of obtaining legal advice, it is not privileged in the first place." 2022 WL 17832506, at *8.

### III. The Court's *In Camera* Review

The communications selected for *in camera* review were all between the Plaintiffs in this matter. Plaintiffs, as co-litigants represented by the same counsel, share a common interest in the litigation of this case. *See, e.g.*, *City of Almaty*, 2019 WL 2865102, at *7. The question for this Court, then, is whether each of the communications was "designed to further that interest," and whether the communications were otherwise privileged under attorney-client privilege or the work-product doctrine.

**Bates Nos. 004187, 004346, and 004375,** are duplicates of a September 7, 2023 WhatsApp exchange between Plaintiffs Celine, Vannessa, Samantha, and Supphattra. In this exchange, the Plaintiffs discussed media coverage about the case; such discussion does not reflect the advice of counsel or attorney mental impressions and is therefore not privileged. *See, e.g.*, *Schultz*, 2011 WL 13305347, at *4 ("[P]laintiffs' communications regarding their general thoughts, reactions, impressions, predictions, etc. of the case will not be subject to the common interest privilege."). To the extent the Plaintiffs generally discussed scheduling a call with counsel to discuss and ask questions about the press coverage related to their case, that correspondence does not reflect legal advice and is therefore not sufficient to trigger the

9

privilege. Finally, the Plaintiffs' discussions regarding the logistics of scheduling an appointment with counsel are not privileged. *See, e.g.*, *BlackRock*, 2018 WL 3584020, at *4 (requiring production of correspondence updating defendant of "hearing dates and the legal representative assigned to each case," because such documents "reflect[ed] the management of litigation, as opposed to litigation strategies and advice"). These documents must be produced.

**Bates Nos. 004476 and 005152** are duplicates of a January 5, 2023 WhatsApp exchange between Supphattra and Felipe. Supphattra and Felipe are discussing a conversation with counsel about the litigation process that reflects legal advice and is therefore privileged. The Plaintiffs are also discussing collecting information and documents at counsel's request, with reference to specific information that the lawyer has directed that they provide. That correspondence is protected under the work-product doctrine and attorney-client privilege. It is not determinative that the litigation was not commenced until September 2023: "Because the [common-interest privilege] protects communications whenever there is a common legal interest, 'it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply.'" *Smith*, 2022 WL 17832506, at *7 (quoting *Schwimmer*, 892 F.2d at 244). A review of the correspondence makes clear that the "primary motivating purpose" behind the collection of documents was "to aid in possible future litigation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 449 (S.D.N.Y. 1995). These documents may be withheld from production.

**Bates No. 004362** is a January 28, 2023 WhatsApp exchange between Celine, Victor, Samantha, and Felipe. The communication notes that unspecified documents have been uploaded to a shared drive, without any further information as to the substance of the

documents uploaded. The document, as currently presented, does not reflect legal advice or counsel's mental impressions and must therefore be produced.

**Bates No. 004436** is a January 12, 2023 WhatsApp exchange between Celine and Supphattra. To the extent that the correspondence references the collection of information at counsel's direction, such references are protected by the work-product doctrine and-attorney client privilege and shall be redacted. Plaintiffs shall therefore redact texts from 10:39:32 through 10:54:16. The remainder of this correspondence must be produced, as discussions about scheduling a time to meet with counsel are merely administrative in nature.

**Bates No. 004377** is a September 22, 2023 WhatsApp exchange between Natalia and Celine where Celine advises Natalia that she can send an email "about this" to counsel. There is no further detail as to the substance of the email to be sent to counsel. This current exchange, without more information, reflects neither legal advice nor counsel's mental impressions and therefore must be produced.

**Bates No. 004443** is an April 8, 2024 WhatsApp exchange between Celine and Supphattra discussing collecting documents for counsel, with reference to specific categories of information and evidence to be collected. This information is protected by the work-product privilege and attorney-client privilege and is therefore properly withheld.

**Bates No. 004595** is a November 15, 2022 WhatsApp exchange between Celine and Vanessa. Plaintiffs assert that "[t]his document is marked privileged as the first message is a link to a google drive where the Plaintiffs were uploading documents upon our request to be shared with us." Dkt. 150 at 2 n.1. Vannessa and Celine generally discussed uploading files to a shared google drive, but their communications lack further detail and therefore do not reflect counsel's mental impressions or any attorney communications. Nor do the messages in this chain reflect legal advice. This document must be produced.

**Bates No. 004609** is an October 18, 2024 WhatsApp exchange between Vannessa and Celine. To the extent the text exchange references advice from counsel regarding document-retention responsibilities, such correspondence is privileged. The remainder of the message exchange is nonresponsive. This document is therefore properly withheld.

**Bates No. 004819** is an October 18, 2024 WhatsApp exchange between Celine and Supphattra discussing counsel's request for specific categories of documents. This correspondence therefore reflects counsel's mental impressions and attorney-client communications and is therefore properly withheld. The remainder of the message exchange is nonresponsive. This document is therefore properly withheld.

**Bates No. 005189** is a January 11, 2023 WhatsApp exchange between Celine and Supphattra referencing the collection of specific information at the direction of counsel pertaining to Plaintiffs' experiences of discrimination and abuse while working at Marie Eiffel. This document is protected by the work-product doctrine and attorney-client privilege and is properly withheld.

**Bates No. 005227** is a September 21, 2023 WhatsApp exchange between Celine, Supphattra, Vannessa, and Natalia, discussing a recent meeting with legal counsel, including legal advice conveyed by counsel at that meeting. Since the messages reference specific legal advice from counsel, this document is privileged and therefore properly withheld.

**Bates No. 005229** is an October 2, 2022 WhatsApp exchange reflecting text messages from Celine to herself. The exchange is nonresponsive, except for the last message, which reflects Celine forwarding a document to herself (with the substance of the document reflected in the file name). Given that this document was collected for the purpose of sending it to counsel, the message is protected under the work-product doctrine and attorney-client privilege and is therefore properly withheld.

**Bates No. 005568** is an October 29, 2022 WhatsApp exchange between Celine and Vannessa discussing the collection of specific information for counsel, as well as the preparation of written narratives/documents for counsel. This document is therefore protected under the work-product doctrine and attorney-client privilege and is properly withheld.

**Bates No. 005654** is a December 17, 2022 WhatsApp exchange between Celine and Supphatttra, discussing the addition of new plaintiffs to the case and the timing of their next meeting with counsel. Contrary to Plaintiffs' assertion that this document contains attorney-client privileged information, this correspondence does not reflect legal advice or any communications with counsel. That obtaining additional plaintiffs furthered a joint legal strategy does not trigger the common-interest privilege because the communication is not otherwise privileged. The document must be produced.

**Bates No. 006278** is a June 18, 2024 WhatsApp exchange between Felipe and Natalia. This exchange includes a forwarded text message from Plaintiffs' counsel reflecting attorney-client communications and legal advice pertaining to settlement. Therefore, the document is properly withheld.

## CONCLUSION

Plaintiffs shall produce the aforementioned documents, that is: Bates Nos. 004187, 004346, and 004375; Bates No. 004362; Bates No. 004436, with redactions from 10:39:32 through to 10:54:16; Bates No. 004377; Bates No. 004595; and Bates No. 005654. With the benefit of the Court's opinion on the fifteen exemplars reviewed *in camera*, the parties shall

meet and confer regarding the remainder of documents withheld under the common interest privilege.

Dated: May 16, 2025
       New York, New York

SO ORDERED.

*Jennifer Rochon*
_____
JENNIFER L. ROCHON
United States District Judge